All right, our final case for today is In Re Andrew Rees or Rees against Marshall Appeal 21258 and we should have Michael Miller and Yannick Polycarp. Yes, I'm here. Excellent. All right, Mr. Miller. May it please the court. Michael Miller on behalf of the appellants Andrew and Megan Rees. This court should reverse and allow the appellants to pay off their Chapter 13 and get it denied the 60 v 6 motion on two grounds. First, by its finding being unreasonable and second by committing an error of law. To my first point, the bankruptcy court's holding was unreasonable for multiple factors. Number one, the plan was substantially consummated. My clients were at the 58th of a 60th month plan. Furthermore, they had the ability to not only reinstate the case, but also pay off the case and get a discharge with a tender of $8,600. Mr. Miller, am I right though, looking at the bankruptcy judge opinion and the record, there had been a number of instances over the course of this 60 month plan where your clients had fallen behind and then they had to catch back up again and then there was the bid about the house and trying to move it away from the precipice of foreclosure. Hadn't there been some history here? Yeah, yes, there was. I think there were two motions that dismissed prior in the case that were resolved. I know one of them was resolved by filing a motion to defer the default to the back end of the case earlier in the case. I believe that was based off my client's wife being off work in the summer, so it was a sort of a different financial setback versus the other ones we listed in the case that we believe contributed to this most recent dismissal. Why didn't, when your clients faced more extraordinary expenditures, whether it was the roof or a much larger amount of money to get the cars fixed, why didn't they approach the trustee in the court with this information to get things adjusted? You can file motions, right, under 1329 to modify the plan. Yes, that's correct. So the information about these financial setbacks, which are specifically mentioned in my brief, that information did not come to us, unfortunately, until the end of the case when this final motion to dismiss was up, and that's when, at that point, we used those to try to help us get the 60 v. 6 motion granted. But we also believe that in addition to the financial setbacks, there also was the fact that what makes this case extraordinary is the large amount of money they paid into the case, which is $50,000. With this payoff, it would be $60,000, and their general unsecured creditors are almost set to be paid in full. But isn't that with the exception of these two credit card bills from Chase that didn't wind up getting scheduled? Right. Two claims by Chase didn't get, they did get noticed, but they didn't file claims. So, you know, because in Chapter 13, if you don't file a claim, you don't get paid. So that kind of goes toward one of the equitable factors is the fact that if they don't get a reinstatement of this case, that Chase can go after my clients with interest and pursue lawsuits. I'm not sure how that cuts, actually, because they were debts. But what I would like to return to, though, is this is Rule 60 v. 6. It is a highly deferential rule toward the, normally the district court judge in this instance, it's the bankruptcy equivalent of Rule 60 v. 6. So what is it that's so unusual about your case that should cause us to find an abuse of discretion? Well, I think it's kind of death by a thousand cuts or abuse of discretion by a thousand cuts. It's the fact of how much money they paid in, the fact that they're at the end of the case, the fact that they navigated through a five-year plan and had to deal with over $40,000 in expenses. But they have retired that much in debt. I mean, it's not like the payments just went up in smoke. They have not nearly so much in debt anymore. That's correct. But, you know, that also kind of circles back to my other argument is because they've made it all the way to almost the one yard line, the finish line, it's a hardship and it's not equitable to not allow them to finish this case, you know. But how could it be an abuse of discretion when the plan has forced them to pay the significant amount of debt off? That even though they don't have the benefit of Chapter 13 anymore, they have been required to pay off that abuse of discretion under, as Judge Wood said, this highly deferential standard. Well, we think that goes to the fact that it makes it more unreasonable that they paid so much into the case. We're definitely not arguing that they were paying more than they had to. But there's no harm to them from paying that amount into the case. It benefits them. It benefits them to the point that creditors got paid, yes. But we also believe that it's a harm because they were at the end of the case and they don't get the discharge, which, you know, is one of the arguments that was cited in a lot of the cases I cited, like the Kowalski case and the Albane case and the small one. We think if this case was earlier on in the case, that this would be a different argument. But we think that it's a hardship to not allow a client who's at the end of the case to be able to pay off the case and get a discharge. That, you know, one-third of Chapter 13 cases get dismissed, that this is a unique case. It's very unusual for a Chapter 13 debtor to come up with $8,600, you know, in the final, you know, leg of a bankruptcy. And, you know, in conjunction with the financial setbacks they have, we think that they meet the 60 v. 6 hurdle. And, you know, the fact that this case was denied makes it unreasonable. We also have my second point where we think that there was an error of law committed as well, too, in the ruling, which also can rise to an abuse of discretion as well to reverse. The judge had stated that he didn't quite say he couldn't. He, I mean, he acknowledged, the way I read that was he was just saying, look, if I grant you this, then there's going to be a long line of other people. My actions do set a precedent. I try to be consistent. I mean, I was hearing that in his remarks, not that somebody had bound and gagged him and said, you know, once you've done this now, thus it will ever be. I mean, that was my reading of it is that we thought it might have influenced his decision because he thought he might have been bound to grant future motions, which I'm not saying. Wasn't he just using that as a way to say this illustrates why this isn't an extraordinary circumstance because this would apply in almost every other bankruptcy that's at this stage? I didn't read that. I mean, it didn't sound like that to me. He just said, if and if I grant this motion, I'll have to contradict what I always do in the face of objections from the trustee and that is grant all the other ones. So I just read that as believing that he was influenced to grant this because out of fear of, you know, setting a precedent, which, you know, stare decisis wouldn't be applicable to a case like this because it's not a conclusion of law. So that was our take on that. But, you know, that goes back to my other argument is it's a combination of all these factors, the error of law, the amount of money they paid in and the injustice of not being able to get a discharge when they're that far into the case. And then the other thing too, is if this gets reinstated, my clients are going to tender that $8,600 to the trustee who's going to then send it to the unsecured creditors. So it's a windfall for the creditors as well, which fosters policies of equitable distribution for creditors, which is a very important bankruptcy principle. All right. Well, if you'd like to save a little for rebuttal. Yes. Yes. I would like to save the remaining time for rebuttal if I can. That would be fine. Ms. Policarp. Yes. Good morning. And may it please the court. Yannick Policarp responding on behalf of Appellee Marilyn O. Marshall, Chapter 13 trustee. And we are respectfully requesting that this court affirm the lower court's order denying the motion under Rule 60B6, which was previously affirmed by the district court. As the court has noted, really the only issue before the court today is whether the appellants have met their burden of proof to establish that the lower court abused its discretion in denying the Rule 60B6 motion. It's not an opportunity to either relitigate the facts or generate disagreement with the lower court's ruling. The Seventh Circuit has held that matters of relief under Rule 60B6 do lie within the sound discretion of the lower court and are reviewed extremely deferentially for clear error. And appellant has failed to meet its burden to establish that the lower court abused its discretion. The Seventh Circuit has set a very high bar for relief under Rule 60B6, stating that it is an exceptional relief reserved for extraordinary circumstances. And 60B6 is an even more highly circumscribed exception to a Rule 60B, which is already reserved for exceptional circumstances. The lower court in, well, Judge Blakely indicated in its district court opinion that one, the lower court did apply the correct standard in its review of appellant's motion under Rule 60B6. Two, it was clear that the lower court weighed the evidence before it, heard the appellant's argument, and made a plausible ruling in denying the Rule 60B6 motion. And as your Honor stated, any concern that the lower court may have had that was iterated in dicta about setting a bad precedent is well-founded. So, in applying the correct legal standard to the appellant's motion, the lower court clearly stated in the transcript, I quote, what you have here are circumstances that are not extraordinary. In fact, they're very ordinary. As you know, cases are dismissed all the time because debtors don't make their plan payments. And then frequently, they come back with motions to vacate and say, now we have the money. There is nothing extraordinary about that fact pattern. Appellant's counsel does state, I do agree with you, but this is a high-paying case. So, we have to look to why this was a high-paying case. And that comes down to the 2005 amendments to the Bankruptcy Act, known as the Bankruptcy Abuse and Prevention Act, which created a means test to analyze a debtor's ability to pay their unsecured creditors and to come up with a formula to have a number for their available disposable monthly income. And as the Supreme Court said in Ransom v. FIA Credit Services, those who can pay their debts should. So, once a plan is proposed for the correct term and the correct disposable monthly income amount, that plan is confirmed as a contract. It is an obligation that the debtors have to complete their monthly payments. And that that has a higher plan payment or a low-income individual struggling to make $100 a month. Your plan obligations are the same. Your obligations to perform under the terms of the plan to completion are the same. And just because an individual is high income and may have a higher burden in terms of making the plan payments, it doesn't warrant the case to be treated differently or to be reviewed under a different standard by the courts. If any debtor falls into default in their plan payments, a motion to dismiss is brought by the trustee. If the default isn't cured, in this case, the motion to dismiss was continued four times, giving the appellants an opportunity to somehow cure or address the default in the plan. Because it wasn't addressed, the case was dismissed in the ordinary course of business. There was nothing extraordinary about the dismissal of the case to warrant relief under 60B6. And the second showing that the appellants must make is that a hardship will result absent relief under 60B6. It's not about what expenses they may have incurred two and three years ago. The question is, will a hardship result if the appellants are denied relief under Rule 60B6? And the lower court stated it absolutely correct that there is no hardship here. There's no eminent harm to the appellants. There's no eminent risk that there will be a foreclosure or homelessness. The only harm cited by the appellants is that they won't get a discharge. And they maybe might have to pay a non-discharge creditor should one seek collection. And that's a hypothetical possibility. But as Judge Golder stated in the lower court opinion, having to pay your debts is not a hardship. And as appellants have stated, they have cash available should any creditor seek payment. And they also have income available. So there is no harm in having to pay their creditors. Now, not getting a discharge is an unfortunate result because they were in the case for a period of time. But as the Seventh Circuit said in Eskridge v. Cook County, an unfortunate result is not a basis for relief under Rule 60B6. The appellant does also argue that it was unreasonable for the judge to deny Rule 60B6 motion. But whether or not the appellant believes it's unreasonable is not an element to establish abuse of discretion. The appellant's brief relies on the Seventh Circuit opinion of McKnight v. U.S. Steele. And in the McKnight case, the Seventh Circuit stated that it can be an abuse of discretion if the appellant can establish that no other reasonable individual would agree with the ruling. It's not whether I think it's reasonable or whether the appellant thinks it's reasonable, but whether no other person would agree that it is reasonable. And this order was previously affirmed by the district court. So I think that defeats the argument in McKnight that no other reasonable person would agree that this order was reasonable. So let me ask you a quick question. Are there any arguments you're making right now that are different from the arguments you would have made if there had been appeal taken from the order of dismissal, which there was not? Yes, because an appeal to an argument, appeal to dismissal would have been different because at the time the case was dismissed, there's absolutely no showing or no argument that somehow the dismissal wasn't appropriate at the time it happened. Appellants can see that they were in default at the time that the case was dismissed. And there was no record created at the time of dismissal that there was any kind of hardship or any type of potential solution to the default in plan payments. So it would have been reviewed differently if we were on appeal for the dismissal because at the time nothing was presented to the lower court to prevent the case from being dismissed at the time. And lower court cannot override the statutes or specific provisions of a confirmed plan. Once a plan falls into default, it doesn't matter how much has been paid in the plan or whether it's in month two or month 58. If a plan is in default, a motion to dismiss is brought and absent cure, the case is dismissed in the ordinary course of business. Does it matter that the trustee, I'm remembering one fact that there was a statement there right in the courtroom today, they've got a check, we're ready to give it to the trustee and the trustee said I don't want it. Is that correct? Right. They did offer a payment to the trustee on a case that was already dismissed. And the trustee had already audited the case and issued a refund of whatever funds we had on hand. So absent a valid basis to vacate dismissal and order of court ordering that the case be reinstated and the trustee take the money. The case was dismissed in proper course and should have remained as such. So and we had no agreement to accept funds. Okay. All right. So unless this court has any further questions for me, I would ask that the ruling of the lower court be affirmed and thank you for your time. All right. Thank you very much. Anything further, Mr. Miller? Yes, just a couple points. First off, we don't think it's relevant if the trustee had wrapped this up because the case was still open and if the judge would have granted the motion, they would have been forced to accept the funds and pay off the case and issue a discharge. And the other thing too is opposing counsel is talking about a hardship versus unreasonableness. Those are two separate things. We're arguing that it was unreasonable and then for just relief because of the hardship. And once again, just to reiterate, two large claims for $28,000 with interest did not get discharged and they could come after the clients. So that in addition to not being able to get a discharge when you're this far into a case we believe is unreasonable. And we are not arguing whatsoever that my clients were voluntarily paying back more than they had to. All we're simply saying is it's just a factor that goes toward the inequitableness of the decision that because they paid so much more, they should get the benefit of a discharge. If there are no further questions, I would ask this court to reverse. Thank you. All right. Seeing none, thank you very much. Thanks to both counsel. We will take this case under advisement and the court will be in recess.